UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES,

v.                                                              Case No: 8:22-cv-78-KKM-MRM

PATRICK DINES,

_____

## ORDER

By pleading not guilty to obstruction of an agency proceeding, Patrick Dines places his intent at issue and the government may introduce other acts to prove his mental state (as well as other relevant facts), provided that the evidence comports with Rule 404(b) and Rule 403. *See United States v. Zapata*, 139 F.3d 1355, 1358 (11th Cir. 1998) (per curiam). Under 18 U.S.C. § 1505, the government must prove that Dines knew about the proceeding and intentionally tried to corruptly influence, impede, or obstruct that proceeding. *See United States v. Taohim*, 817 F.3d 1215, 1220 (11th Cir. 2013) (per curiam).

Dines moves to exclude some of the government's proffered 404(b) evidence as improper bad character and propensity evidence. (Doc. 98.) Specifically, Dines objects to testimony regarding (1) prior conversations in which Dines instructed captains to lie to the

Coast Guard and pretend that extra passengers were crewmembers, (2) a prior incident in which Dines offered a captain who objected to overcrowding more money to captain overcrowded yachts, and (3) a conversation Dines had in May 2017 with a captain regarding how to respond to a Coast Guard interview about an investigation into Dines's yacht company and requested the captain brief him afterwards. (Doc. 98 at 3–4.) The government responds that the evidence comports with Rule 404(b) because it shows that Dines's conduct was not the product of a mistake or accident but was part of his plan and modus operandi, and it also shows his knowledge and intent. (Doc. 122.) After reviewing the parties' papers and hearing argument at the pretrial conference, the Court denies Dines's motion to exclude evidence of other acts under Rule 404(b).

I.  Prior Instructions to Captains to Lie to Coast Guard

Dines argues that his prior statements to captains encouraging them to tell the Coast Guard that passengers were crewmembers in the event of a boarding are not relevant to his motive, plan, identity, knowledge, or intent, and that lack of mistake is not at issue. (Doc. 98 at 7, 9, 11, 14, 15.) The government responds that these conversations make it more likely that Dines knew the Coast Guard would investigate overcrowded yachts and that he intentionally gave the same instructions to the passengers on March 14, 2017, as he had previously given to captains. (Doc. 122 at 9–10.) The government further contends that, to the extent Dines will allege that the passengers from the Jaguar misunderstood his

2

statements, these previous instances make it more likely that his statements were an intentional effort to obstruct a Coast Guard investigation and not a mere accident or result of confusion. (*Id.* at 10–11.)

The prior statements satisfy the three-part test set forth in *United States v. Miller*, 959 F.2d 1535, 1538 (11th Cir. 1992). First, this evidence is relevant to a purpose other than Dines's propensity to ask others to lie to the Coast Guard—specifically to show Dines's intent and a lack of mistake with respect to his March 14, 2017 statements. It is also relevant to prove his knowledge that the Coast Guard investigates overcrowding. The earlier statements are also sufficiently similar to the charged offense to make them relevant, as they both bear on Dines's intent to mislead the Coast Guard regarding the number of passengers and crew aboard his boats. Second, the government plans to call three witnesses to testify to the earlier statements, (Doc. 122 at 12), which provides "sufficient proof so that a jury could find that [Dines] committed the extrinsic act[s]." *Miller*, 959 F. 2d at 1538. Third, the potential for unfair prejudice does not substantially outweigh the probative value of this evidence. As is common, the government will attempt to establish intent through circumstantial evidence, and the prior statements are quite probative on that score. They are also probative of Dines's knowledge and lack of mistake (and potentially other relevant facts). In the light of their heavy probative value, Dines fails to show that potential unfair prejudice tips the Rule 403 scale in his favor.

## II. Offer of Additional Payment to Captain Overcrowded Boat

Dines argues that evidence of him offering more money to a captain to run overcrowded yachts is not relevant to any permissible use and must be excluded as improper character evidence. (Doc. 98 at 13.) The government responds that—like the above instances—it shows Dines's intent, the absence of a mistake, and lack of accident. (Doc. 122 at 15.)

This prior incident might prove relevant at trial in multiple ways. First, the prior offer of additional payment after a captain voiced concerns with exceeding the permissible passenger limits suggests that Dines knew there was a problem with overcrowding. Knowledge of what the maritime regulations permit is relevant to whether Dines knew an investigation would include this aspect of the March 14, 2017 charter. Relatedly, it could prove relevant to show lack of mistake or accident with his statements to the surviving passengers on March 14, 2017. Finally, it might become relevant at trial to show his intent to obstruct the proceeding. The testimony of the captain provides a sufficient basis for the jury to conclude that the extrinsic act occurred, and any unfair prejudice does not substantially outweigh the probative value of the evidence.

## III. May 2017 Phone Call with Captain Patterson

Finally, Dines argues that the recorded phone call between Dines and Captain Patterson in May 2017 is not relevant and is improper character evidence. (Doc. 98.) The

4

government replies that this evidence is not Rule 404(b) evidence at all but rather an "uncharged offense arising out of the same transaction as the charged offense." (*Id.* at 17.) In the alternative, the government contends that it is proper Rule 404(b) evidence because it tends to prove Dines's state of mind, knowledge, intent, and that his earlier statements on March 14, 2017, were not due to a mistake. (Doc. 122 at 16–18.)

The government is correct on the first point, but for a different reason. Evidence is intrinsic and falls outside the scope of Rule 404(b) entirely when it is "(1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense." *United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007). Although this phone call is not an uncharged offense as the government conceded at the pretrial hearing, it is inextricably intertwined with the evidence of the charged offense because it is directly relevant to the defendant's mental state and temporally proximate to his earlier statements and the Coast Guard investigation. *See United States v. McNair*, 605 F.3d 1152, 1203 (11th Cir. 2010) ("Rule 404(b) does not exclude evidence that is 'inextricably intertwined' with evidence of the charged offense.") (quoting *United States v. Wright*, 392 F.3d 1269, 1276 (11th Cir. 2004)). Thus, this subsequent phone call is not Rule 404(b) evidence at all.

5

Finally, even if it were too remote in time to be intertwined with the charged offense, it passes the Rule 404(b) test. It is relevant for the reasons stated above, there is a sufficient basis for the jury to conclude that it occurred (the recorded call), and any unfair prejudice does not substantially outweigh its probative value. *See Miller*, 959 F.2d at 1538. That the conversation occurred after March 14, 2017, does not bar its admission under Rule 404(b). *See Zapata*, 139 F.3d at 1357 ("[t]he principles governing 'other crimes' evidence is the same whether the conduct occurs before or after the offenses charged").

IV.  **CONCLUSION**

For the above reasons, Dines's Motion in Limine to Exclude 404(b) Evidence (Doc. 98) is **DENIED**.

**ORDERED** in Tampa, Florida, on December 2, 2022.

*Kathryn Kimball Mizelle*
Kathryn Kimball Mizelle
United States District Judge