UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES,

v.                                             Case No: 8:22-cr-78-KKM-MRM

PATRICK DINES,

_____

## ORDER

In December 2022, a jury convicted Patrick Dines of obstructing a Coast Guard proceeding. *See* Jury Verdict (Doc. 159). During trial, Dines's counsel twice moved for a mistrial based on questions that the prosecutor asked during his cross examination of Dines. I denied Dines's first motion and took the second motion under advisement. After trial, I permitted Dines to file supplemental briefing. *See* Oral Order Scheduling Deadlines (Doc. 158). Dines did so, raising the arguments he made at trial and making new ones too. *See* Suppl. Br. to Mot. for Mistrial (Doc. 172). The government filed a response in opposition. *See* Resp. in Opp'n (Doc. 175). Because Dines fails to show that he suffered substantial prejudice necessitating a mistrial, I deny his motion.

I. **BACKGROUND**

The government charged Patrick Dines with obstructing a Coast Guard Proceeding by encouraging witnesses to provide false information to investigators. *See* Indictment (Doc. 1). During the government's cross examination of Dines, defense counsel objected three times regarding three different lines of questioning. First, the prosecutor asked Dines, "You're aware the government provided your attorneys with discovery in this case, is that correct?" Dines responded "Yes, I am aware." Trial Tr. Vo. III (Doc. 169) at 254–55. The government proceeded, "They go over that discovery with you?" *Id.* Counsel objected and moved for a mistrial, arguing that the question was an improper comment on Dines's Sixth Amendment right to counsel and an infringement on attorney-client privilege. *Id.* at 255. I sustained the objection, but denied the motion for mistrial because the second question had not "elicited a response." *Id.* at 257. The prosecutor did not pursue additional questions relating to discovery and never again mentioned the question, what discovery Dines reviewed, or what materials counsel was provided by the government.

Later in the cross examination, the prosecutor asked Dines "Are you aware Mr. Zawacki filed a police report?" *Id.* at 258. Dines's counsel objected that the question contained hearsay, exceeded the scope of direct examination, and was unfairly prejudicial. *Id.* at 258–59. I sustained the objection based on Rule 403 prejudice. *Id.* at 262. The

government moved to a new line of questioning and did not bring up the question, Mr. Zawacki, or the police report again.

Finally, the prosecutor asked Dines several questions about the cost of the incident to Dines's business. *See id.* at 263. To the first question, Dines replied in the affirmative that the incident cost the company business. *Id.* But Dines's counsel objected to relevance when the prosecutor asked Dines whether it cost the company "over a hundred thousand dollars in additional expenses and the refund of charter fees as of April of 2017?" *Id.* at 816–17. I sustained the objection and instructed the prosecutor to move on "unless there is a foundation that he was aware of the costs at the time of the charged conduct." *Id.* at 816. The government rephrased the question a few times, but Dines's counsel objected, and I sustained each objection. *See id.* at 263. Dines never provided an answer to the questions, and the government did not mention Dines's first answer or the questions again.

Following the government's cross examination, and after I excused the jury, Dines's counsel moved for a mistrial based on the prosecutor's alleged improper remarks throughout cross examination. Oral Mot. for Mistrial (Doc. 155). I reserved ruling and permitted Dines to submit supplemental briefing after the verdict. *See* Oral Order Scheduling Deadlines. Dines filed a 34-page supplemental brief supporting his motion and the government filed a 16-page response in opposition.

3

## II. LEGAL STANDARD

"The decision to grant a mistrial is within the sound discretion of the trial judge" because the trial judge is "in the best position to evaluate the prejudicial effect of a statement or evidence on the jury." *United States v. Blakey*, 960 F.2d 996, 1000 (11th Cir. 1992). The defendant must show that he suffered "substantial prejudice, which occurs when there is a reasonable probability that, but for the alleged error, the outcome of the trial would have been different." *United States v. Grzybowicz*, 747 F.3d 1296, 1311 (11th Cir. 2014) (internal citations omitted); *United States v. Newsome*, 475 F.3d 1221, 1227 (11th Cir. 2007). If "the record contains sufficient independent evidence of guilt, any error was harmless." *Newsome*, 475 F.3d at 1227.

## III. ANALYSIS

Dines presents three reasons I should declare a mistrial based on his original oral motion at trial, and two additional reasons that he raises for the first time in his supplement to the motion. I address each in turn.

### A. Oral Motion

Dines moved for a mistrial based on three lines of questioning during the government's cross examination of Dines. Because I promptly addressed each objection and Dines suffered no prejudice, Dines's motion is denied on these grounds. Dines argues that he suffered substantial prejudice when the prosecutor asked him if (1) he reviewed

4

discovery with his attorneys, (2) he knew that the owner of the boat filed a police report, and (3) the March 2017 incident had a financial impact on his business. Suppl. Br. to Mot. for Mistrial at 1.

Dines argues that the first objectionable line of questioning improperly commented on Dines's Sixth Amendment right to counsel. *Id.* Dines contends that the government intended the questions to "impugn the integrity of Mr. Dines's defense by discrediting Mr. Dines's testimony or his legal counsel simply because he exercised his right to counsel and reviewed discovery with his attorneys." *Id.* at 6. According to Dines, asking whether his attorneys went over discovery with him implied that Dines's "attorneys coached Mr. Dines to give certain answers." *Id.* Dines further points to *United States v. McDonald*, 620 F.2d 559, 564 (11th Cir. 1980), to argue that the government's purpose behind this question was "to cause the jury to infer that [Dines] was guilty."

The government responds that the question "did not in fact elicit privileged communication because the Court sustained the objection before the defendant could answer." Resp. in Opp'n at 5. The government further distinguishes the prosecutor's question from the question in *McDonald*, arguing that "no such inference of guilt was suggested to the jury through the government's question—which went unanswered and unreferenced in closing argument." *Id.* at 6. Finally, the government points out that "the jury clearly understood that the defendant was represented by counsel," and I instructed

5

the jury that it could "not conclude that the Defendant committed the crime charged in the indictment solely because he exercised his right to counsel." *Id.* at 7, 8–9. Thus, the government argues, the question could not have prejudiced Dines.

Dines argues that the second objectionable line of questioning "impermissibly exceeded the scope of Mr. Dines's direct examination" and "resulted in highly inflammatory evidence and prejudice against Mr. Dines." Suppl. Br. to Mot. for Mistrial at 11. Dines argues that "questions about the police report suggested the existence of additional, uncharged criminal conduct and welcomed the jury to convict Mr. Dines based on that conduct." *Id.* at 13. The government responds that "[t]he questions did not even indicate the police report was filed 'against' the defendant, and there was no reference to, or evidence elicited about the contents of the report or allegations contained therein." Resp. in Opp'n at 9–10.

Finally, Dines argues that the third objectionable line of questioning "exceeded the scope of direct examination" and "welcomed the jury to convict Mr. Dines based on his financial concerns or status—not whether he committed the charged offense." Suppl. Br. to Mot. for Mistrial at 14, 16. The government responds that "the Court agreed that in the light of the sustained objections there was no prejudice" because the government "ultimately abandoned this line of questioning." Resp. in Opp'n at 10.

Even if I concluded that any of the objectionable questions caused Dines unfair prejudice, the government argues that a mistrial is unwarranted here because "the jury's verdict was based on other significant evidence of guilt." *Id.* at 11. The government references the testimony from eyewitnesses, captains who previously worked with Dines, and a Coast Guard investigator who warned Dines about violating Coast Guard regulations as significant evidence of guilt. *Id.*

Dines's motion on each of these grounds is denied. In each case, the prosecutor asked a question, the defense objected, I sustained the objection, and the prosecutor moved on without an answer and without further comment. At trial, Dines's counsel moved for a mistrial after objecting to the first line of questioning. I declined to declare a mistrial based on the prosecutor's question about reviewing discovery because it did not elicit a response and was therefore not unduly prejudicial. Trial Tr. Vol. III at 256–57. Like that instance, Dines did not provide answers to the other questions to which Dines's counsel objected. And unlike the cases Dines cites, the prosecutor did not mention the questions in closing argument, nor did the government use any of the questions to imply Dines's guilt. *See McDonald*, 620 F.2d at 560 (reversing conviction based on improper government comments during closing arguments concerning the defendant's right to counsel); *United States v. Holmes*, 413 F.3d 770, 775 (8th Cir. 2005) (reversing conviction based on prosecutor's improper comments during rebuttal argument impugning the integrity of the

7

defense); *Old Chief v. United States*, 519 U.S. 172, 180 (1997) (reversing conviction when district court improperly admitted evidence of prior offenses). Thus, none of these unanswered (and uncommented upon) questions create substantial prejudice that requires a mistrial, particularly because I sustained the objections, and instructed the jury that "anything lawyers say is not evidence." *See* Court's Jury Instructions (Doc. 160) at 4. Dines has not shown that he suffered "substantial prejudice," or that the outcome of trial would have been different absent these questions. *See Grzybowicz*, 747 F.3d at 1311. I deny Dines's motion on these grounds.

### B. New Grounds for Mistrial

Dines argues for the first time in his supplemental brief that the government violated the Court's rulings on the motions in limine and that these violations provide additional reasons for the Court to declare a mistrial. Dines argues that "[t]he government improperly made virtually the entire trial about the drowning incident and the 404(b) evidence." Suppl. Br. to Mot. for Mistrial at 16. Regarding evidence of the deaths, Dines argues that the number of people on the boat had nothing to do with the deaths, but that the government "repeatedly, expressly, and baselessly linked the number of people on the boat to those deaths." *Id.* at 19 (emphasis omitted). Dines points to specific examples he contends made impermissible reference to the deaths: (1) in the government's opening statement when the prosecutor stated that "[a]n overcrowded FYC yacht finally

8

experienced a serious emergency at sea;" (2) in the government's direct examinations of Captain Cottrell and Coast Guard Investigator Knapp when the prosecutor asked why the witnesses were "concerned specifically with the safety of the vessel capacity;" and (3) in the government's direct examinations of Mr. Cheng and Ms. Teoh, when Dines alleges that the prosecutor spent too much time asking about events leading up to the indicted conduct. *See id.* at 19–22. Dines argues that the government confirmed it was attempting to link the number of people on the boat to the drownings when the prosecutor argued in response to Dines's Rule 29 motion for judgment of acquittal that the Coast Guard found out "that the worst case scenario happened. [FYC] ha[s] tested luck a bunch of times and finally it's caught up to them." *Id.* at 23.

Dines also argues that I should declare a mistrial because "the government also spent almost the entire rest of its case relying on prior, uncharged bad acts to convict Dines, rather than testimony about the charged obstruction." *Id.* Dines argues that "half" of the government's witnesses testified "only about 404(b) conduct." *Id.* at 24. Dines compares the government's conduct to two out-of-circuit cases granting a new trial based on prejudice resulting from the trial courts' improper admission of 404(b) evidence. *See id.* at 29–30 (citing *United States v. Forcelle*, 86 F.3d 838 (8th Cir. 1996); *United States v. Fortenberry*, 860 F.2d 628 (5th Cir. 1988)). Dines points to his argument at trial that I should have instructed the jury that they must find Dines guilty of specific acts of

9

obstruction not named in the indictment. *Id.* at 32. I declined to give the requested instruction because doing so would be to take facts that "were argued at trial and instruct the jury that they need to find those specific facts when they may or may not line up with how the evidence came in." Trial Tr. Vol. IV (Doc. 170) at 60. I determined that such an instruction would "be me characterizing Mr. Cheng's testimony for the jury and I don't want to do that." *Id.*

The government urges that I "decline to entertain" Dines's motion on these grounds because he failed to raise these concerns at trial, and I should not permit Dines to "relitigate" my prior rulings. Resp. in Opp'n at 12. The government further contends that it "strictly complied" with my rulings on Dines's motions in limine. *Id.*

I addressed Dines's motions in limine regarding the admission of evidence of the deaths and Rule 404(b) evidence before trial. *See* Order Granting Mot. in Lim. (Doc 138); Order Den. Mot. in Lim. (Doc. 140). I ruled that the government's Rule 404(b) evidence was admissible, and the government did not exceed the scope of this ruling at trial. Dines also failed to object to any of this testimony at trial. I also granted Dines's motion in limine to exclude evidence of the deaths at sea and instructed the government that it could not present evidence of the deaths at trial. Order Granting Mot. in Lim. at 1. I specified, however, that the government could present evidence of the "situation leading up to the alleged obstruction efforts," including evidence of "sea conditions, time of day, length that

10

the individuals had been missing at sea without any life-saving equipment, and other unfavorable facts that bear on the gravity of the situation." *Id.* at 3. None of the instances that Dines references exceeded the scope of my ruling. The government acted within its bounds to describe the events at sea as a "serious emergency," discuss the Coast Guard's safety concerns, and provide context for events leading up to the charged conduct. Each of these circumstances could "bear on Dines's knowledge and motive at that time." *Id.* at 4. None of Dines's arguments present a "manifest necessity" to declare a mistrial. I deny his motion, including on these new grounds.

## IV.   CONCLUSION

Dines fails to meet his burden to show that he suffered substantial prejudice requiring me to declare a mistrial. Accordingly, it is **ORDERED**: Dines's motion for declaration of mistrial is denied.

**ORDERED** in Tampa, Florida, on March 21, 2023.

Kathryn Kimball Mizelle
United States District Judge

11